**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BILLIE L. BUMGARNER,                                         Case No. 1:14-cv-788

              Plaintiffs,                                         Dlott, J.
                                            Bowman, M.J.
       v.

FORD MOTOR GENERAL RETIREMENT
PLAN, et al.,

              Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff Billie L. Bumgarner, proceeding as Administratrix on behalf of the Estate of Russell E. Lehman, filed a complaint against Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking to recover pension benefits.   On November 14, 2014, Defendants filed a motion to dismiss the entirety of Plaintiff's complaint based upon an asserted failure to state a claim. (Doc. 7).   Thereafter, Plaintiff filed an amended complaint, which rendered moot Defendants' original motion to dismiss. (Doc. 15).   However, Defendants filed a second "partial motion to dismiss" certain claims in the amended complaint.   (Doc. 17).   Plaintiff filed a response, to which Defendants have filed a reply.   (Docs. 21, 22).   The Defendants' partial motion to dismiss has been referred to the undersigned for initial review and a report and recommendation.

Defendants' motion seeks dismissal of Plaintiff's claims for promissory estoppel, breach of fiduciary duty, and breach of contract on grounds that those three claims are duplicative of, and barred by, Plaintiff's claim for the denial of benefits under Section 502(a)(1)(B) of ERISA.   Defendants alternatively argue that Plaintiff's allegations fail to state a claim for any of the three referenced causes of action, even if the claims were not

barred under ERISA. For the reasons that follow, Defendants' motion should be granted.

### I. Background

Plaintiff filed suit on behalf of the Estate of Russell E. Lehman for pension benefits pursuant to the Ford General Retirement Plan Appendix L and a related "election kit." ("the Plan")(Doc. 15 at ¶4). Mr. Lehman was a participant under the Plan and eligible for pension benefits. He was receiving an annuity as a retiree in joint and survivorship form, when he notified Ford on April 15, 2013 that he was cancelling his surviving spouse benefits due to the recent death of his wife. On or about April 23, 2013, the Ford National Employee Services Center ("FNESC"), the Administrator of the Plan, acknowledged Lehman's change in status and new monthly benefit amount. Within days, FNESC mailed out lump sum buy-out election packets, permitting certain Plan participants to elect to receive their pension benefits in an optional lump sum form rather than as an annuity. FNESC sent an election packet to Lehman, which he completed and signed on or about June 27, 2013. The election form returned by Lehman disclosed Lehman's widower status, but incorrectly indicated a lump sum election amount that was calculated based upon the joint and survivor benefits that he had been receiving, prior to his change in status. The total lump sum indicated was $170,128.65.

On July 10, 2013, FNESC mailed a revised election kit based upon the single life form payment rather than the prior joint life benefit determination. The new dollar figure included in the revised kit listed a lower lump sum benefit amount of $157,581.87. Plaintiff alleges that there was no cover letter or explanation of the revised forms.

2

Allegedly unaware of any need to do so, Lehman did not complete any additional paperwork and did not return the new election kit.

On November 4, 2013, Lehman's daughter, Janet Wessel, telephoned Ford to inquire about Lehman's failure to receive the lump sum payment he anticipated receiving based upon the June 27, 2013 election packet. Instead, he had received the normal pension amount for November 1, 2013. Plaintiff alleges that during that telephone call, Lehman's daughter was - for the first time - alerted that his prior election was not effective, but that "if they would still like to do the lump sum then they would have to submit an appeal letter along with the completed election kit." (Doc. 15 at ¶22).

On January 17, 2014, FNESC issued a "Claim Denial Letter" to Lehman, stating in relevant part:

> Your election period was from May 1, 2013 through July 29, 2013. Due to changes required to your original calculation, the original lump sum election kit that you received was deemed invalid. A revised kit was mailed to and received by you, and a 30-day extension to the original deadline was provided for you to make an election. Because of your failure to respond before your election period ended, you were deemed to have declined to make an election under the Lump Sum Window.

(Doc. 15-3, Exhibit number 107).

On February 19, 2014, Lehman died. Following Lehman's death, and based upon the determination that his earlier election for a lump sum was "invalid," benefits were discontinued. On February 26, 2014, a timely notice of the intent to appeal was sent to FNESC. On June 16, 2014, Plaintiff filed a formal appeal on behalf of Lehman's estate. On July 29, 2014, that appeal was denied.

Plaintiff has filed suit in this Court against: (1) the Ford General Retirement Plan Committee members as Plan Fiduciaries ("the Committee"); (2) FNESC as Plan

3

Administrator; and (3) the Plan itself.   Plaintiff's amended complaint asserts entitlement to recovery under multiple theories, including: (1) promissory estoppel based upon the representation to Lehman that he would receive a lump sum payment of $170,128.65; (2) breach of fiduciary duty; (3) wrongful denial of benefits under 29 U.S.C. §1132(a)(1)(B); and (4) breach of contract.

In the portion of her amended complaint seeking relief, Plaintiff seeks declaratory relief stating that: (1) "Defendants are bound to the amount ….of $170,128.65 for a lump sum election payment" and that (2) "Defendants, jointly and severally, were grossly negligent and/or committed constructive fraud" in numerous specific ways, which "breached their fiduciary duties under the Plan and the statute."   (Doc. 15 at 20).   In addition, Plaintiff seeks "relief pursuant to ERISA 29 U.S.C. §1132(a)(3)(A) and to enjoin violations under 29 U.S.C. §1132(a)(3)(B) and prevent a forfeiture through injunctive relief," as well as "[t]o obtain all other further equitable relief available to [Plaintiff] including surcharge, reformation, and/or disgorgement including relief for the negative tax impact on the beneficiaries of the Estate."   (Doc. 15 at 20-21).   Finally, Plaintiff seeks a declaration of rights under the Plan as permitted by 29 U.S.C. §11102 and 29 U.S.C. §1132(a)(1)(A) and 29 U.S.C. §1132(a)(1)(B) and an award of attorney's fees and prejudgment interest.   *Id.*

## II.  Analysis

### A.  Standard of Review

Defendants argue that dismissal of three claims is appropriate under Rule 12(b)(6) for failure to state a claim.   Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff need only plead "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, in recent years, the Supreme Court has brought greater focus to that pleading standard, holding first in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) that the "famous" no-set-of-facts formulation "has earned its retirement" and instituting a new standard that a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face" *Id.* at 1974.   In *Ashcraft v. Iqbal,* 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.   Under *Iqbal,* a trial court evaluating a complaint must cipher out "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" from legal conclusions that are supported by factual allegations. *Id.* To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly,* 127 S.Ct. at 1965.

### B.   Whether Three of Plaintiff's Claims are Barred as Duplicative

Defendants persuasively argue that three of Plaintiff's claims (breach of fiduciary duty, promissory estoppel and breach of contract) are barred as a matter of law, because Section 502(a)(1)(B) of ERISA would provide identical relief.   Defendants base their argument in part on *Varity Corp. v. Howe,* 516 U.S. 489 (1996), in which the Supreme Court held that §502(a)(3) of ERISA, for breach of fiduciary duty, "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [Section] 502 does not elsewhere adequately remedy."   516 U.S. at 512 (citing 29 U.S.C. 1132(a)(3)). In *Wilkins v. Baptist Healthcare Systems, Inc.,* 150 F.3d 609, 614-615 (6th Cir. 1998), the

Sixth Circuit cited *Varity* when it held that, "where an adequate remedy exists for a benefits claim under ERISA, ancillary claims asserting breach of fiduciary duty must be dismissed." Based on *Wilkins*, Defendants seek dismissal of Plaintiff's breach of fiduciary duty claim in this case. For the same reasons, Defendants contend that Plaintiff's estoppel and breach of contract claims are "restyled" or ancillary ERISA claims that should be dismissed in light of the "adequate" remedy already provided under §1132(a)(1). *See also Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 454 (6th Cir. 2003).

In response, Plaintiffs rely upon *Hill v. Blue Cross & Blue Shield of Michigan*, 409 F.3d 710 (6th Cir. 2005), in which the Sixth Circuit clarified its position and – in Plaintiffs' view - "overruled … dicta in *Wilkins*," (Doc. 21 at 3). In *Hill*, participants in a health plan filed a putative class action against the plan's third party administrator for wrongful denial of their claims for emergency medical treatment expenses under §1132(a)(1). The plaintiffs also included a breach of fiduciary duty claim under §1132(a)(3), seeking plan-wide relief. The Sixth Circuit explained that, under *some* circumstances, a plaintiff seeking injunctive relief may bring claims under both §1132(a)(1) and §1132(a)(3):

> In this case, an award of benefits to a particular Program participant based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that BCBSM is using an allegedly improper methodology for handling all of the Program's emergency-medical-treatment claims. Only injunctive relief of the type available under § 1132(a)(3) will provide the complete relief sought by Plaintiffs by requiring BCBSM to alter the manner in which it administers all the Program's claims for emergency-medical-treatment expenses.

*Id.* at 718. Plaintiff argues that the same result was obtained in *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 842 (6th Cir. 2007)(permitting separate

misrepresentation claim against an employer who was not responsible for the denial of benefits, because "[i]n each case where this circuit has found that a plaintiff's §1132(a)(3) claim of breach of fiduciary duty is merely a repackaged §1132(a)(1)(B) claim, the claims could have been brought under §1132(a)(1)(B).").   However, the *Gore* court was careful to note that if the plaintiff had alleged that the claims administrator had breached its fiduciary duty by wrongfully denying benefits, the claim would have been duplicative.   *Id.* at 841.

Plaintiff also relies on *CIGNA Corp. v. Amara* ("*Amara III*"), 131 S. Ct. 1866 (2011). However, *Amara III* does not alter *Varity* and the undersigned finds the facts and claims presented in that case to be distinguishable.   Like *Hill*, *Amara III* involved a putative class action by a group of employees whose pension plan had been changed by their employer, CIGNA Corporation, from an annuity based on the employee's preretirement salary and length of service, to an entirely new plan based in part upon a defined annual contribution from CIGNA.   CIGNA assured employees that the new plan represented an improvement to their benefits.   The change required CIGNA to transfer a lump sum of money into the new plan, intended to represent the already-earned benefits for employees under the old plan.   CIGNA promised that its initial deposit represented the "full value" of the employees' prior service under the old plan.   Plaintiffs filed suit when that amount turned out to be less than the full value of the plaintiffs' likely benefit under the old plan.

The district court agreed that CIGNA's descriptions of the new plan were incomplete and misleading.   To make the affected plaintiff class whole, the court reformed the entire ERISA plan, relying on §1132(a)(1).   Rather than merely returning to

7

the old plan, the court "erased" the portion of the new plan that assured participants the greater of "A" (their old plan benefits) *or* "B" (their new plan benefits) and instead substituted a new provision of the court's own making, whereby each employee would be guaranteed A (the old accrued plan benefits) *plus* B (new plan benefits, excluding CIGNA's initial cash deposit).   On review, the Supreme Court remanded, holding that §1132(a)(1) did not grant the trial court the power to re-write the terms of a plan as it previously existed, but reasoning that such equitable reformation might be authorized by §1132(a)(3).   *Id.* at 1876-1877.

Reviewing all relevant case law, the undersigned concludes that Plaintiff's claims for equitable relief in this case are not "appropriate" due to the availability of an "adequate" remedy under §1132(a)(1).   In other words, the facts and claims presented fall within the scope of *Wilkins* rather than *Hill* or *Amara III*.   To hold otherwise would arguably be to permit the exception of *Hill* to swallow the rule, and frustrate the intent of §502(a)(3) as a limited "catch-all" provision.   Coincidentally, while the undersigned was engaged in drafting this Report and Recommendation, the Sixth Circuit Court of Appeals issued an *en banc* decision in *Rochow v. Life Insurance Co. of North America* ("*Rochow II*"), in which the appellate court made a similar determination in a case involving the denial of disability benefits.   *Id.*, ___ F.3d ___, 2015 WL 925794 (6th Cir., March 6, 2015)("A claimant can pursue a breach-of-fiduciary-duty claim under §502(a)(3)…only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under §502(a)(1)(B)  is otherwise shown to be inadequate.").

8

The body of case law on which Plaintiff relies generally involves litigants who sought plan-wide injunctive relief, or alternatively sued different defendants under differing theories of relief. *See e.g., Rochow,* at *7 (noting that *Hill* exception is limited to plan-wide relief), and *Gore, supra*. By contrast, claims similar to Plaintiff's, involving a single beneficiary's claim for benefits filed under differing theories have generally been dismissed. *Accord Rochow II, at *6* ("Impermissible repackaging is implicated whenever, in addition to the particular adequate remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury."); *Willard v. Ohio Operating Engineers Pension Plan,* 942 F. Supp.2d 748 (S.D. Ohio 2013)(dismissing §1132(a)(3) claim that Pension Board breached its fiduciary duty by fabricating facts as the basis for denying plaintiff's claim); *Blair v. Pension Committee of Johnson & Johnson*, 831 F. Supp.2d 1021 (W.D. Ky. 2011); *Taylor v. AK Steel Corp.*, 2014 WL 1892591 (E.D. Ky., May 12, 2014); *Hackney v. Lincoln Nat. Life Ins. Co.*, 2014 WL 3940123 (W.D. Ky., Aug. 12, 2014).

In a recent case involving a fact pattern close to that presented here, another district court similarly granted the Defendants' partial motion to dismiss under Rule 12(c). *See Donati v. Ford Motor Co. General Retirement Plan, Retirement Committee*, (E.D. Mich. July 23, 2014)(claim involving miscalculation of buy-out option, dismissing as "repackaged" §1132(a)(1) claim allegedly separate §1132(a)(3) claim for misrepresentation of lump sum). The undersigned recognizes the existence of some authority reaching a contrary result, but finds it to be either distinguishable, or, respectfully, a minority view that is contrary to the very recent *Rochow II*. *Contra Pearson v. FirstEnergy Corp Pension Plan*, 2014 WL 7410510, ___F. Supp.3d ___ (N.D.

9

Ohio Dec. 31, 2014).   In short, based on the above analysis and underscored by the Sixth Circuit's decision in *Rochow II*, the undersigned agrees with Defendants that Plaintiff's claims for breach of fiduciary duty and further equitable relief, as ostensibly stated under the "catchall" provision of §1132(a)(3), should be dismissed.   The Plaintiff's "equitable" claims to "prevent a forfeiture [of the lump sum benefit award] through injunctive relief," as well as "[t]o obtain ....surcharge, reformation, and/or disgorgement" merely reflect a desire to reverse the ancillary effects of the original denial of benefits, which constitutes a single injury.   *See Rochow*, at *7 ("The denial [of benefits] is the injury and the withholding is simply ancillary thereto, the continuing effect of the same denial.   Together they comprise a single injury.").

### C.   Alternative Grounds for Dismissal

Defendants alternatively argue that Plaintiff's theories of promissory estoppel, breach of fiduciary duty, and breach of contract fail for additional reasons, based upon Plaintiff's failure to adequately plead facts that would support the elements of those claims.   The undersigned finds no need to reach these alternative arguments in light of the above conclusion that existing law bars all three claims under §1132(a)(3), based upon the availability of an adequate remedy under §1132(a)(1).

### D.   Dismissal of Plan and NESC On Grounds that Neither is a Fiduciary

Under ERISA, a party is a fiduciary if it "exercises any discretionary authority or discretionary control respecting management of [a] plan," or "has any discretionary authority or discretionary responsibility in the administration of such plan."   29 U.S.C. §1002(21)(A).   In the amended complaint, Plaintiff alleges that the Committee is the body with the "authority to manage the Plan under...the Plan document."   (Doc. 15 at

¶5).  Consistent with that allegation, Plan documents state that the Committee "shall have discretionary authority to administer the benefit structure of the Plan, and to this end may construe and interpret the Plan…." (*See* Doc. 7-1).  Defendants appear to concede, at least for purposes of the pending motion, that the Committee is properly named as a fiduciary.

By contrast, Defendants argue that both the Plan and FNESC should be dismissed because neither is a fiduciary.  For example, FNESC is alleged to be the Administrator of the Plan.  Under ERISA, a party that is "without the power to make plan policies or interpretations," that "performs purely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits," is not considered to be a fiduciary when another entity "retain[s] the final authority to determine whether a claim should be paid." *Briscoe v. Fine*, 444 F.3d 478, 488-489 (6th Cir. 2006)(additional citation omitted).

Plaintiff argues that, despite its role as Plan Administrator, FNESC still operates as a "functional fiduciary" insofar as FNESC made the determination to reject Lehman's initial lump sum election form as "invalid." Plaintiff alleges that FNESC "failed to properly exercise its discretion to calculate the benefits in the initial…lump sum amount, exercised discretion and decided 'ultra vires' to reject Mr. Leman's lump sum election when it did not have the authority to do so….and sent a second lump sum election packet without timely notice of its 'ultra vires' rejection." (Doc. 15 at ¶ 5).

In their reply memorandum, Defendants assert that, to the extent that FNESC performed the tasks of calculating Plaintiff's benefits in the first election kit, applying plan eligibility rules, and communicated with Lehman those are precisely the tasks identified

as insufficient to convert FNESC to being a fiduciary under ERISA.  See *Briscoe*, 444 F.3d at 488-489.  As in *Briscoe*, Defendants state that another entity (the Committee) "retained the final authority to determine whether a claim should be paid," and ultimately denied Plaintiff's claim for benefits.  *See also Baxter*, 941 F.2d at 454-55.  However, Defendants' position ignores the fact that Plaintiff has alleged that FNESC took a central role in determining whether to pay Plaintiff's claim.   In the amended complaint, Plaintiff alleges that it was FNESC and not the Committee that made the critical decision to reject Lehman's original lump sum election kit as "invalid," and set an "arbitrary and capricious deadline" for returning the second election kit.  (Doc. 15 at ¶¶28-29).  To that extent, Plaintiff appears to allege that FNESC exercised discretionary authority and took action that resulted in the denial of Plaintiff's claim for benefits, irrespective of any subsequent decision by the Committee.

Under *Briscoe*, the undersigned declines to recommend the dismissal of FNESC at this time.   *Briscoe* involved the dismissal of an entity on summary judgment, not on a motion to dismiss.   Additionally, the Sixth Circuit was careful to point out that defining fiduciary status under a plan "is not an all or nothing concept" and instead must be determined "with respect to the particular activity in question."   *Briscoe*, 444 F.3d at 486 (internal quotation marks and additional citation omitted).   Ultimately in *Briscoe*, the third-party administrator was held to exercise "sufficient control over plan assets" to qualify as an ERISA fiduciary.   *Id.* at 488.   In the present case, the undersigned is evaluating only the allegations of the complaint.   Based upon the limited review applicable to a motion to dismiss, and the allegations related above, Defendants' motion to dismiss FNESC on grounds that it is not a fiduciary should be denied.

12

Defendant also urges the Court to dismiss the Plan itself because it is not a fiduciary.   However, 29 U.S.C. §1132(d)(1) states that the plan itself "may sue or be sued [under ERISA] as an entity."   *See also Waskiewicz v. UniCare Life & Health Ins. Co.*, 2014 WL 118501, 2014 US Dist. LEXIS 36291 (E.D. Mich., March. 20, 2014). Plaintiff argues that any breach of fiduciary duty by the Committee is done as an agent "on behalf of the Plan as a legal entity" and therefore "imputed to create liability on the part of the Plan."   The undersigned agrees that the Plan itself should remain as a Defendant subject to suit for the recovery of benefits. *Accord Sullivan v. Cap Gemini Ernst & Young U.S*., 573 F. Supp.2d 1009, 1016-1017 (N.D. Ohio 2008).

### III. Conclusion and Recommendation

For the reasons discussed above, IT IS RECOMMENDED THAT Defendants' partial motion to dismiss (Doc. 17) be GRANTED in part and DENIED in part. Specifically, IT IS RECOMMENDED THAT Count I (Promissory Estoppel), Count II (Breach of Fiduciary Duty) and Count IV (Breach of Contract) be DISMISSED WITH PREJUDICE for failure to state a claim, but that Defendants' motion to dismiss FNESC and the Plan as Defendants be denied at this time.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BILLIE L. BUMGARNER,                                    Case No. 1:14-cv-788

           Plaintiffs,                     Dlott, J.
                                                  Bowman, M.J.

    v.

FORD MOTOR GENERAL RETIREMENT
PLAN, et al.,

           Defendants.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.   That period may be extended further by the Court on timely motion by either side for an extension of time.   All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.   A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).